FILED
JANUARY 25, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOUI HASHIM AL-BAREH ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **08 C 589** |
| ) | |
| MICHAEL CHERTOFF, SECRETARY, ) | |
| DEPARTMENT OF HOMELAND ) | |
| SECURITY; KEITH NYGREN, SHERIFF, ) | **JUDGE DER-YEGHIAYAN** |
| MCHENRY COUNTY; DANIEL SEDLOCK, ) | **MAGISTRATE JUDGE BROWN** |
| CHIEF OF CORRECTIONS, ) | |
| MCHENRY COUNTY JAIL ) | |
| ) | |
| Respondents ) | |

**PETITIONER'S PETITION FOR A WRIT OF
HABEAS CORPUS**

COMES NOW Petitioner, Loui Hashim Al-Bareh, by his undersigned attorneys, and asks this Court to issue a Writ of Habeas Corpus, ordering Respondents (hereinafter referred to as the "Government," or "Respondents"), to show cause why his detention is not unlawful; and states in support of that Petition the following:

**STATEMENT OF THE CASE**

1. Loui Hashim Al-Bareh is a lawful permanent resident of the United States. He is a native and citizen of Iraq, who initially fled from Saddam Hussein's regime after participating in the Shi'a revolt in 1991. He obtained refugee status in the U.S. in 1997, and thereafter became a permanent resident in 2000. From 2005-2006, he was employed with the Titan Corporation, which contracted with U.S. Army Intelligence to provide translators for U.S. forces in Iraq. Mr. Al-Bareh returned to Iraq during that year, working as a translator for U.S.

1

forces in Iraq for nearly a year.

2.  Subsequently, Mr. Al-Bareh was convicted of wire fraud, as part of a scheme to defraud the government using "Link" welfare cards. That conviction is an aggravated felony, as defined in the Immigration and Nationality Act. 8 U.S.C. § 1101(a)(43). Mr. Al-Bareh was therefore detained and placed into removal proceedings on June 8, 2007. He is currently in removal proceedings.

3.  Mr. Al-Bareh applied for protection from removal to Iraq, and his application is currently pending before the Chicago Immigration Court. He has now been detained more than seven months without having any decision in his case.

## JURISDICTION

4.  This Court has jurisdiction pursuant to 28 U.S.C. §2241, the general grant of habeas authority to the District Courts; Art. I, §9, cl. 2 of the United States Constitution; 28 U.S.C. §1331 (federal question jurisdiction); 28 U.S.C. § 1361 (mandamus authority); and 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act).

## VENUE

5.  Venue lies in the United States District Court for the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(e) in that this is a civil action commenced against an officer or employee of the United States or any agency thereof acting in his official capacity and this is a judicial district in which the Respondent in the action resides. The Northern District of Illinois is also the District where the Petitioner is detained, and where Petitioners' custodian, Keith Nygren, resides and has his place of business.

## THE PARTIES

6.  Petitioner Loui Hashim Al-Bareh is a lawful permanent resident from Iraq, currently detained by the Government.

7. Respondent Michael Chertoff is sued in his official capacity as Secretary of the Department of Homeland Security (DHS), an agency of the United States. His agents continue to detain the Petitioner, who is detained under authority of the DHS. He is an official custodian of the Petitioner.

8. Respondent Keith Nygren is the McHenry County Sheriff. He is the legal custodian of the Petitioner.

9. Respondent Daniel Sedlock is the Chief of Corrections of McHenry County Jail, with which ICE has contracted to detain Petitioner, and is a custodian of Petitioner.

## EXHAUSTION

10. Petitioner is currently detained in violation of the statute and the constitution. Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c), but contends that this interpretation of the statute would violate the Due Process Clause of the Fifth Amendment of the Constitution.

## STATEMENT OF FACTS

11. Mr. Al-Bareh entered the United States as a refugee from Iraq in 1997. Ex. A. He had been living in refugee camps in Saudi Arabia from 1991-1997, after he participated in the Shi'a rebellion in southern Iraq, which was crushed by forces loyal to Saddam Hussein.

12. In 2000, Mr. Al-Bareh became a lawful permanent resident of the United States. Ex. A.

13. In 2002, Petitioner began working at his brother's grocery store, which was engaged in using "Link" cards to engage in welfare fraud. He was eventually charged with wire fraud arising from those activities, and pled guilty to wire fraud in 2006. Ex. A. He was sentenced to 18 months in prison.

14. Meanwhile, in 2004 the Petitioner applied for a job as an interpreter for the U.S. Army in Iraq, through a military contractor called the Titan Corporation. Ex. B, Ex. C. He was trained in Atlanta, Georgia, and was subsequently sent to Kuwait, and then Baghdad. He assisted in translating between interrogators and detainees, and believes that some of the detainees recognized him, and were able to determine or recall where he was from and who his family was. He therefore fears to return to Iraq.

15. After Petitioner was released from criminal custody for his wire fraud conviction, Petitioner was taken into ICE custody, and was placed into removal proceedings by issuance of a Notice to Appear on June 8, 2007. Ex. A.

16. The Notice to Appear charges that the wire fraud conviction is an aggravated felony, rendering him removable. *Id.*

17. Commission of an aggravated felony also subjects an alien to mandatory detention pursuant to 8 U.S.C. § 1226(c) during the pendency of removal proceedings.

18. Federal regulations, which govern the actions of federal immigration judges and of ICE, preclude the release of anyone convicted of an aggravated felony while proceedings are ongoing. 8 C.F.R. §§ 236(c)(1)(i); 1003.19(h)(2)(i)(D).

19. Petitioner has remained detained without bond or bail since being placed into removal proceedings on June 8, 2007.

20. On June 27, 2007, Petitioner applied for protection from removal by filing form I-589 in open court.

21. On July 11, 2007, another hearing was conducted, at which time the case was scheduled for trial on August 16, 2007. Ex. D, Ex, E. Petitioner was ordered to file documents and a brief in support of his application by July 30, 2007. Ex. F. This he did.

22. On August 16, 2007, a trial ("merits hearing," in the terminology of the

immigration courts) was conducted, wherein testimony and evidence was accepted by the Immigration Court.

23. At the conclusion of the trial, the Immigration Judge rescheduled the case for September 27, 2007, for a decision. Ex. G.

24. On September 27, 2007, the Immigration Judge informed Petitioner (through counsel) that instead of issuing a decision orally, that a written decision would be forthcoming. The case was subsequently scheduled for another hearing on October 25, 2007; but that hearing was stricken. Ex. D. Since that point, the case has been scheduled for no hearings.

## LEGAL BACKGROUND

25. The Supreme Court decided in *Zadvydas v. Davis*, 533 U.S. 678 (2001) that individuals already ordered removed cannot be detained indefinitely. If removal cannot be accomplished within 6 months of their removal order, they may apply to District Court for a writ of habeas corpus, and are entitled to release unless their removal is likely in the reasonably foreseeable future.

26. The Sixth and Ninth Circuits have found that those same protections would apply to individuals who are still in removal proceedings, but who will not be susceptible to eventual removal, e.g., because they are from countries to which removal is impossible. *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003); *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005). The Seventh Circuit has yet to rule on this precise issue, but has indicated in dicta that the argument would be a strong one. *Hussain v. Mukasey*, __ F.3d __, 2007 WL 4387284 (7th Cir. Dec. 18, 2007) (Posner, J.) ("Inordinate delay before the order was entered might well justify relief, *Ly v. Hansen*, 351 F.3d 263, 271-73 (6th Cir.2003), with habeas corpus the appropriate vehicle for obtaining it, as we know from *Zadvydas* and *Kim*. It would be a considerable paradox to confer a

constitutional or quasi-constitutional right to release on an alien ordered removed (*Zadvydas*) but not on one who might have a good defense to removal.")

27. If Petitioner had been ordered removed on June 27, 2007, instead of filing his request for relief, he would now be able to file a habeas corpus petition under *Zadvydas*, if he were still detained.

28. The United States does not currently remove individuals to Iraq. Generally, the Government eventually releases detainees from Iraq, because their removal is impossible. *See, e.g.*, *Alhamdani v. Attorney General of U.S.*, 2003 WL 21448784 (N.D.Tex., Apr. 28, 2003) (unpublished); *Alfadheli v. Crawford*, 2006 WL 897069 (D.Ariz., Apr. 6, 2006) (unpublished); *Ali v. Crawford*, 2006 WL 1663345 (D.Ariz., June 7, 2006) (unpublished); *Al-Salahi v. Loiselle*, 2006 WL 2709682 (E.D.Va., Sept. 19, 2006) (unpublished); *Al-Zamely v. Gonzales*, 2007 WL 2995209 (W.D.Okla., Oct. 11, 2007) (unpublished). This Court has addressed a *Zadvydas* claim by an Iraqi, *Ablahad v. Ashcroft*, 2002 WL 31027952 (N.D.Ill., Sept. 6, 2002) (Darrah, J.), and found the claim to have merit, refusing to dismiss the case and ordering appointment of counsel. In the one case nationwide where an Iraqi *Zadvydas* case went to trial, the Iraqi detainee did prevail. *Jabir v. Ashcroft*, 2004 WL 60318 (E.D.La., Jan. 8, 2004) (unpublished).

29. The Immigration Court has no power, under its governing regulations, to order his release. Under the regulations, the Petitioner is subject to mandatory detention, without regard to the probable length of his additional detention, without regard to how long he has been detained, and without regard to the likelihood of future removal. Any further administrative requests for release are therefore futile.

**COUNT ONE**
**(Violation of Statute)**

30. Mr. Al-Bareh realleges and incorporates by reference each and every allegation contained in paragraphs 1-30.

31. The statute, 8 U.S.C. § 1226(c), cannot reasonably be held to require the mandatory detention of the Petitioner. Petitioner cannot be removed for three reasons: (a) the United States is currently unable to remove anyone to Iraq; (b) the Petitioner is substantially likely to prevail on his claim to protection from removal, based on his fears arising from his service as a translator for the Army; (c) while the Petitioner's case is pending before the Immigration Court – and during any appeal to the Board of Immigration Appeals, if necessary – the Government is forbidden to effectuate the Petitioner's removal. 8 C.F.R. § 1003.6(a).

32. As such, the Court should order the Petitioner's release, because there is no substantial likelihood that Petitioner can be removed from the United States within the reasonably foreseeable future.

## COUNT TWO
**(Violation of Due Process)**

33. Mr. Al-Bareh realleges and incorporates by reference each and every allegation contained in paragraphs 1-33.

34. Procedural due process requires, in most cases, a hearing of some kind. *Mathews v. Eldridge*, 424 U.S. 319, 332-333, 96 S.Ct. 893, 901-902 (1976). The process due depends on three factors:

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. 424 U.S. at 335, 96 S.Ct. at 903.

35. The Petitioner, as one lawfully present in the U.S. (pursuant to his admission as a refugee and subsequent permanent resident status), has a significant interest in being free from detention while his case is being fought in the immigration courts.

36. Moreover, this interest is particularly significant since the Petitioner simply cannot be removed from the country at this time.

37. Petitioner has been held without bond or bail for more than six months since his application for protection from removal under 8 U.S.C. § 1231(b)(3) was filed.

38. The delay in adjudication of Petitioner's case is in no way attributable to him, nor has he engaged in any delaying tactics. The *Zadvydas* Court, citing the Executive Office for Immigration Review, noted that "in 85% of cases in which aliens are detained pending pursuant to [8 U.S.C.] § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days…in the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." *Zadvydas v. Davis*, 533 U.S. 678 at 1721. Petitioner has now been waiting for his removal proceedings to conclude before the Immigration Judge for 6 months, longer than the average time noted by the *Zadvydas* court for a removal proceeding to be completed, including appeal times.

39. The Due Process Clause of the Fifth Amendment prohibits the Government from depriving any person of liberty without due process of law. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690.

40. Mr. Al-Bareh lawfully entered the United States as a refugee, and adjusted status to become a permanent resident. "[O]nce an alien enters the country, the legal

8

circumstance changes, for the Due Process Clause applies to all persons within the United States, including aliens." *Zadvydas*, 533 U.S. at 693; *see also Hoyte-Mesa v. Ashcroft*, 272 F,3d 989 (7th Cir. 2001) (individuals who have not entered U.S. lack certain Due Process rights).  Once an alien has entered the country, the Due Process Clause clearly applies to them, as it applies to all "persons" within the United States, including aliens. *See Plyer v. Doe,* 457 U.S. 202, 210 (1982); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596-98, and n. 5 (1953); *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886).

41. Moreover, if analyzed under the "reasonableness" test advocated by Justice Kennedy in his dissent in *Zadvydas*, 533 U.S. at 708, and his concurrence in *Demore v. Kim,* 155 L. Ed. 2d. 724, 123 S. Ct. 1708, 1722 (2003), the detention of Mr. Al-Bareh also fails.[1]

42. Therefore, the ongoing detention of the Petitioner violates Due Process. The Court should therefore order Petitioner's immediate release from custody.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully prays that this Court:

1. Grant his Petition for a Writ of Habeas Corpus and order Respondents to show cause why the Petitioner is being detained in violation of the laws and Constitution of the United States;

2. Find that the continued detention of the Petitioner violates the laws and Constitution of the United States;

---

[1] In *Demore*, four justices held that mandatory detention under §1226(c) violated the Due Process clause, without more.  Thus, Justice Kennedy's concurrence, to the extent that it corresponds to the views of those other four justices, constitutes a majority of the justices in *Demore*. Justice Kennedy's conclusion that unreasonable detention violates Due Process receives support from the four dissenting justices, and can therefore be read as a secondary majority holding of the *DeMore* Court.

3.      Order the Government to release the Petitioner from custody;

4.      Order the Government to conduct an individualized bond hearing at which a reasonable bond should be set, sufficient to ensure his presence at future hearings and for any reasonably foreseeable removal;

5.      Grant appropriate declaratory and injunctive relief in the case, both at a preliminary stage, and as permanent relief in the case; and

6.      Grant other and further relief as this Court deems necessary.

Respectfully submitted,
LOUI HASHIM AL-BAREH

By:    /s Claudia Valenzuela
         Attorneys for Petitioners

CHARLES ROTH
CLAUDIA VALENZUELA
NATIONAL IMMIGRANT JUSTICE CENTER
208 South LaSalle Street
Suite #1818
Chicago, Illinois 60604
(312) 660-1613
(312) 660-1506 (fax)