**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**LOUI AL-BAREH**

Plaintiff/Petitioner,

v.

**MICHAEL CHERTOFF, SECRETARY, DEPARTMENT OF HOMELAND SECURITY; KEITH NYGREN, SHERIFF, MCHENRY COUNTY; DANIEL SEDLOCK, CHIEF OF CORRECTIONS, MCHENRY COUNTY JAIL,**

Defendants/Respondents.

Case No.: 08 C 589

**PETITIONER'S REPLY**

**TABLE OF CONTENTS**

**I. INTRODUCTION....................................................................................................1**

**II. FACTUAL BACKGROUND ........................................................................................2**

A. Mr. Al-Bareh's Entry Into the United States ........................................................2

B. Mr. Al-Bareh's Removal Proceedings (Period of Detention)...............................2

C. Mr. Al-Bareh's Post-Removal Hearing Period (Period of Detention)....................3

D. Immigration Decision ............................................................................................4

**III. ARGUMENT.............................................................................................................5**

A. The Government Cannot Continue To Hold Mr. Al-Bareh Because The Detention Is Not Related To A Legitimate Government Purpose. ..........................6

1. Under the Constitution, the Government cannot detain Mr. Al-Bareh if it is not making efforts to remove him. .........................................6

2. Under 8 U.S.C. § 1231(a), the Government cannot detain Mr. Al-Bareh because removal to Saudi Arabia is not possible. ............................8

B. The Government Had Its Bite At The Apple And Cannot Now Remove Mr. Al-Bareh To A Country Not Designated In His Removal Hearing. .................9

1. Under the Constitution, the Government may not remove Mr. Al-Bareh to Saudi Arabia without first holding a fair hearing, which already occurred as to Iraq only. ...............................................................10

2. Under the 8 C.F.R. § 1240.10(f), the Government may not remove Mr. Al-Bareh to a Saudi Arabia unless it designated Saudi Arabia in the removal hearing. ................................................................12

**IV. CONCLUSION ........................................................................................................13**

# TABLE OF AUTHORITIES

**Cases**

*Andriasian v. INS*,
180 F.3d 1033 (9th Cir. 1999) .......... 10

*Argersinger v. Hamlin*,
407 U.S. 25 (1972) .......... 7

*Demore v. Kim*,
538 U.S. 510 (2003) .......... 7

*Hunt v. Elkhart County Sheriff*,
95 F.Supp.2d 930 (N.D. Ind. 2000) .......... 7

*Hussain v. Mukasey*,
510 F.3d 739 (7th Cir. 2007) .......... 6

*In the Matter of Al-Bareh*,
No. A75-052-990 (Feb. 13, 2008) .......... 2, 3, 4, 11

*Jama v. ICE*,
543 U.S. 335 (2005) .......... 12, 13

*Johnson v. Herman*,
132 F.Supp.2d 1130 (N.D. Ind. 2001) .......... 8

*Kazlauskas v. INS*,
46 F.3d 902 (9th Cir. 1995) .......... 3

*Kossov v. INS*,
132 F.3d 405 (7th Cir. 1998) .......... 5, 10, 11

*Kuhai v. INS*,
199 F.3d 909 (7th Cir. 1999) .......... 9, 10, 12

*Nadarajah v. Gonzales*,
443 F.3d 1069 (9th Cir. 2006) .......... 8

*Najjar v. Ashcroft*,
257 F.3d 1262 (11th Cir. 2001) .......... 10, 12

*Ngo v. INS*,
192 F.3d 390 (3d Cir. 1999) .......... 4

*Parra v. Perryman*,
172 F.3d 954 (7th Cir. 1999) .......... 7

*Tijani v. Willis*,
430 F.3d 1241 (9th Cir. 2005) .......... 7

*Ulysse v. DHS*,
291 F.Supp.2d 1318 (M.D. Fla. 2003) .......... 8

*Xi v. INS*,
298 F.3d 832 (9th Cir. 2002) .......... 8, 9

*Zadvydas v. Davis*,
533 U.S. 678 (2001) .......... passim

**Statutes**

8 U.S.C. § 1226 .......... 6, 9

8 U.S.C. § 1231 .......... 5, 6, 8, 9

**Regulations**

8 C.F.R. § 1240.10 .......... 10, 12

## I. INTRODUCTION

Loui Al-Bareh honorably and bravely served the United States as a U.S. Army translator in the midst of hostilities in Iraq. It is because of his courageous service to the United States that he would be a prime target by anti-U.S. forces were he to return; thus, he cannot go back to his home country of Iraq. The Government tried and failed to remove Mr. Al-Bareh to Iraq based on a wire fraud offense that the Immigration Judge observed "did not involve a particularly serious crime." An entire removal hearing was held on the issue of whether Mr. Al-Bareh could be removed to Iraq, the Immigration Judge denied the Government's request, and the Government has informed Mr. Al-Bareh that it will not appeal that ruling.

Now, however, the Government wants a second bite at the apple without the required Constitutional and statutory safeguards. Without prior notice, the Government now says it wants to remove Mr. Al-Bareh to an entirely different country, Saudi Arabia, and to detain him unconstitutionally in the meantime. The Government's bait-and-switch from Iraq to Saudi Arabia, after an unsuccessful removal hearing concerning only Iraq, is an impermissible end-run around the Due Process Clause and the protections provided in the Immigration and Nationality Act.

The legal issue in this case is straightforward: An alien ordered removed from the U.S. may be detained only if the Government is making efforts to remove him. The Government may make efforts to remove an alien only to countries that the Immigration Judge designated during the alien's removal hearing. The Immigration Judge did not designate Saudi Arabia during Mr. Al-Bareh's removal hearing. Thus, the Government cannot continue to detain Mr. Al-Bareh ostensibly to deport him to Saudi Arabia. This is the beginning and the end of the Government's unlawful effort to detain Mr. Al-Bareh any longer.

## II.    FACTUAL BACKGROUND

### A.    Mr. Al-Bareh's Entry Into the United States

Loui Al-Bareh is a 41-year-old native from Iraq who has been granted withholding of removal as to Iraq. *In the Matter of Al-Bareh*, No. A75-052-990 at *7 (Feb. 13, 2008). Mr. Al-Bareh has spent nearly eleven months in the custody of the Defendants (collectively, "Government") at the McHenry County Jail in Woodstock, IL. Because the Immigration Judge's ("IJ") decision in Mr. Al-Bareh's case contains a thorough review of the facts of Mr. Al-Bareh's flee from Iraq, his prison camp term and his entry into the United States, they will not be repeated here. For the Court's convenience, that decision is attached hereto as Exhibit 1.

### B.    Mr. Al-Bareh's Removal Proceedings (Period of Detention)

On June 1, 2007, Mr. Al-Bareh was placed in Immigration & Customs Enforcement ("ICE") detention. On June 11, 2007, Mr. Al-Bareh was sent a Notice to Appear in removal proceedings. (Ex. 2, Notice to Appear in Removal Proceedings.) That same month, Mr. Al-Bareh submitted his Form I-589 application for withholding of removal and protection under the Convention Against Torture ("CAT"). (Ex. 3, I-589 Application for Asylum and for Withholding of Removal.) On July 30, 2007, in compliance with the Pre-Hearing Order, Mr. Al-Bareh submitted a pre-hearing statement. (Ex. 4, Al-Bareh's Pre-Hearing Statement Filed July 30, 2007; Ex. 5, Order of IJ to File Pre-Hearing Statement.) Mr. Al-Bareh sought withholding of removal as well as withholding or deferral protection under the CAT. (Ex. 4, Al-Bareh's Pre-Hearing Statement Filed July 30, 2007.)

On August 16, 2007, Mr. Al-Bareh's Individual Merits Hearing was held. At that hearing, Mr. Al-Bareh's supervisor in the Army, Officer Yi, and Mr. Al-Bareh's friend from the refugee camp, Abdul Al-Shawi, testified as to conditions in Iraq. The testimony reflected that Mr. Al-Bareh—because of his prior involvement in a rebellion against the Iraqi government and

his service as an Iraqi translator for the U.S.—would be killed at the hands of the Iraqi government if forced to return to Iraq. *Id*. Mr. Al-Bareh's testimony was confirmed by the Country Report for Iraq introduced into evidence. *See Kazlauskas v. INS*, 46 F.3d 902, 906 (9th Cir. 1995) (country condition reports are "the most appropriate and perhaps the best resource" for "information on political situations in foreign nations" (internal quotation omitted)). At the hearing, the IJ designated Iraq a country of removal. In its filings here, the Government conspicuously does not contend that Saudi Arabia was ever hinted at, let alone designated, as a country to which Mr. Al-Bareh could or should be deported during the deportation proceedings, and Mr. Al-Bareh is not aware of any evidence to suggest that it was. To be sure, the IJ's opinion catalogues all of the evidence admitted, and no evidence and no country report was admitted for Saudi Arabia.[1] Further, the IJ's opinion barely mentions Saudi Arabia.

### C. Mr. Al-Bareh's Post-Removal Hearing Period (Period of Detention)

On August 16, 2007, Mr. Al-Bareh's Individual Hearing was completed and the record was closed. (*See* Ex. 6, Notice of Hearing in Removal Proceedings.) The IJ set a hearing for an oral decision on September 27, 2007. (Ex. 7, Notice of Hearing in Removal Proceedings for September 27, 2007.) On September 27, 2007, the IJ informed Mr. Al-Bareh that he would issue a written decision in the case shortly. When that decision did not come, the IJ informed Mr. Al-Bareh that a decision would be made by January 1, 2008. After that date came and went, Mr. Al-Bareh filed his original habeas petition in this Court on January 25, 2008. (D. 14 at 3.)

---

[1] The written record of Mr. Al-Bareh's deportation proceedings was apparently misplaced by the Immigration Office and was not located and made available in sufficient time to incorporate citations to it in this Reply. Counsel will review the record once it has been obtained and supplement this brief if the Court deems it necessary.

**D. Immigration Decision**

The IJ granted Mr. Al-Bareh withholding of removal on February 13, 2008. *Al-Bareh*, No. A75-052-990 at *7. Regarding Mr. Al-Bareh's wire fraud conviction, the IJ stated that "[t]here is no evidence that there was any force or violence used by [Al-Bareh] or any of the other conspirators in committing the offense." *Id*. Further, Mr. Al-Bareh "did not initiate the crime." *Id*. Based on these facts, the IJ ruled that Mr. Al-Bareh's "conviction did not involve a particularly serious crime." *Id*.

Further, the IJ found that Mr. Al-Bareh "has adequately established that, due to his former position as an interpreter during interrogations, he faces a more-likely-than-not chance of persecution if he were to return to Iraq." *Id*. at 13. In forming his opinion, the IJ's findings were about removing Mr. Al-Bareh only to Iraq. *See id*. The IJ did not reference country reports for any country other than Iraq. *See id*. The IJ did not consider evidence for any country other than Iraq. *See id*. In short, the IJ only considered removal as to Iraq. *See id*. Ultimately, the IJ determined that because there is a clear probability that because Mr. Al-Bareh would be persecuted in Iraq based on his membership in a social group of contract interpreters for the United States Army, Mr. Al-Bareh met the standard for withholding of removal as to Iraq. *Id*. The Government has represented that it is not appealing the IJ's ruling.

Despite the grant of Withholding of Removal as to Iraq and the Government's decision not to appeal, the Government has not released Mr. Al-Bareh. Instead, the Government says it wants to remove Mr. Al-Bareh to Saudi Arabia—a country not listed as a possible country of removal in Mr. Al-Bareh's hearing. Meanwhile, Mr. Al-Bareh is suffering his tenth month in ICE custody at the McHenry County Jail in Woodstock, IL. *Ngo v. INS*, 192 F.3d 390, 397-98 (3d Cir. 1999) ("Characterizing prolonged detention as anything other than punishment might be somewhat puzzling to petitioner, who remained in jail under the same conditions as before the

state released him, although his status had technically changed from that of a state inmate to an INS 'detainee.'"). Meanwhile, the Government is employing a removal shell game, switching countries after it loses before the IJ. As a matter of common sense and fundamental fairness, this is wrong. And as a matter of constitutional and statutory law, it is impermissible.

## III. ARGUMENT

Due process requires notice and a hearing where one can present evidence on their behalf. The Government now says that it is trying to remove Mr. Al-Bareh to Saudi Arabia. But Mr. Al-Bareh did not have notice or a hearing regarding removal to Saudi Arabia.[2] The IJ did not discuss Saudi Arabia as a country of removal. Mr. Al-Bareh did not present evidence concerning his fears of persecution in Saudi Arabia. The IJ did not make any findings as to Saudi Arabia. The Government sought removal *only to Iraq*—not to any other country—and Mr. Al-Bareh has been granted Withholding of Removal as to Iraq. The Government now says it wants to remove Mr. Al-Bareh to Saudi Arabia. But, Mr. Al-Bareh never "had anything approaching a full opportunity to present evidence concerning [his] fears of persecution" as to Saudi Arabia, a violation which amounts to "a fundamental failure of due process." *Kossov v. INS*, 132 F.3d 405, 408 (7th Cir. 1998).

This due process violation is material to Mr. Al-Bareh's detention under 8 U.S.C. § 1231(a). The Supreme Court has made clear that it allows mandatory detention only for a time "reasonably necessary to bring about that alien's removal." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Here, the Government cannot detain Mr. Al-Bareh for the simple reason that it cannot bring about removal to Saudi Arabia.

[2] All parties agree that Court's jurisdiction to hear this matter is not in doubt because Mr. Al-Bareh challenges the Government's *legal authority to detain him*, rather than a discretionary decision by the Attorney General.

**A. The Government Cannot Continue To Hold Mr. Al-Bareh Because The Detention Is Not Related To A Legitimate Government Purpose.**

The Government has both Constitutional and a statutory duty not to detain an alien unless the detention is related to a legitimate government purpose.[3] During the removal period, the alien "normally is held in custody" with a Government purpose of "secur[ing] the alien's removal." *Zadvydas*, 533 U.S. at 682 (emphasis added). If the Government detains for more than a "brief" time without a government purpose (when it cannot effect removal), then the detention violates both due process and the Immigration and Nationality Act ("INA"). As will be shown below, the Government has no authority to detain Mr. Al-Bareh because it cannot effect his removal.

**1. Under the Constitution, the Government cannot detain Mr. Al-Bareh if it is not making efforts to remove him.**

Non-citizen aliens have a liberty interest in being free from detention. *Zadvydas v. Davis*, 533 U.S. 678, 89-690 (2001); *Hussain v. Mukasey*, 510 F.3d 739, 743 (7th Cir. 2007). Government detention violates due process unless it is reasonably related to a legitimate government purpose. In *Zadvydas*, 533 U.S. at 689-90, the Government argued that it needs no legitimate purpose in order to detain an alien under 8 U.S.C. § 1226—that the Attorney General alone determines "in what circumstances and for how long" to detain. *Id*. at 689. The Supreme Court in *Zadvydas* rejected this argument stating that it has "serious doubt" that such a reading is constitutional. *Id*.

Even though an alien possesses a Fifth Amendment liberty interest, the immigration detention statutes, on their face, do not require a government purpose in order to detain—this

3 As the Government concedes, Mr. Al-Bareh is in detention under 8 U.S.C. § 1231(a). While 8 U.S.C. § 1226(c) may no longer apply given the IJ's ruling, the fact remains that Mr. Al-Bareh is *still* detained. Thus, the issue of detention is hardly moot.

presents a problem under the Constitution. *Id*. at 690, *overruling in part Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999). "[I]t is a cardinal principle of statutory interpretation . . . that when an Act of Congress raises a serious doubt as to its constitutionality, this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Zadvydas*, 533 U.S. at 689 (internal citation and quotation omitted). Accordingly, the Supreme Court imposed an implicit limitation on the post-removal immigration detention statute that a detention may only be for "a period reasonably necessary to bring about that alien's removal from the United States." *Id*. This is because although the "basic purpose [of] effectuating an alien's removal" is a legitimate government purpose, *id*. at 697, detention for this purpose may only be for a "very limited time." *Demore v. Kim*, 538 U.S. 510, 529 n.12 (2003); *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005). As the Supreme Court concluded, if a statute allows for detention when there is *no* possibility of removal, then there are substantive due process concerns because (a) the need to detain to ensure the alien will attend future removal proceedings is "weak or nonexistent," and (b) the need to protect the community is insufficient without a finding that the alien is dangerous. *Zadvydas*, 533 U.S. at 690-92. In other words, detention is only lawful when "necessary to bring about that alien's removal." *Id*. at 689.

The Due Process Clause protects against even short detentions. In *Argersinger*, the Supreme Court noted that there must be protections "in a case that actually leads to imprisonment even for a brief period." *Argersinger v. Hamlin*, 407 U.S. 25, 33 (1972). Courts in the Seventh Circuit have grappled with the boundaries of "brief time," concluding that while a 51-hour detention is short enough to not raise due process concerns, 18 days is clearly excessive, and no matter how "permissibly 'brief' . . . might be defined, it would be less than 57 days." *Hunt v. Elkhart County Sheriff*, 95 F.Supp.2d 930, 937 (N.D. Ind. 2000); *Johnson v. Herman*,

132 F.Supp.2d 1130, 1139 (N.D. Ind. 2001) ("The Due Process Clause clearly protects against eighteen days of unlawful incarceration."). Mr. Al-Bareh has already been detained for at least 57 days since a final order was entered in his case; this is clearly too long to satisfy due process.

**2. Under 8 U.S.C. § 1231(a), the Government cannot detain Mr. Al-Bareh because removal to Saudi Arabia is not possible.**

In addition to the Constitutional duty, during the 90-day removal period, the Government has a statutory duty to detain only if it can effect removal. In other words, "when an alien is ordered removed from the United States, the Attorney General is obligated to facilitate that individual's actual removal within 90 days, a period called the 'removal period.'" *Xi v. INS*, 298 F.3d 832, 834, 840 n.6 (9th Cir. 2002) ("This holding does not, however, absolve the INS of the statutory duty to effect the physical removal of individuals ordered removed within the statutory specified 90-day 'removal period.'") And, "DHS has a statutory duty to effect removal within the 90-day period, if possible." *Ulysse v. DHS*, 291 F.Supp.2d 1318, 1324 (M.D. Fla. 2003). Said another way, "the statutes at issue permit detention only while removal remains reasonably foreseeable." *Nadarajah v. Gonzales*, 443 F.3d 1069, 1078 (9th Cir. 2006).

The statutory text of 8 U.S.C. § 1231(a) confirms that the "removal period" is only in effect if the Attorney General is making efforts to remove. Looking to the statutory text, 8 U.S.C. § 1231(a)(1) states that during the "Removal period," 8 U.S.C. § 1231(a)(1) (title), "the Attorney General shall remove the alien," 8 U.S.C. § 1231(a)(1)(A). Accordingly, detention under § 1231(a) is only allowed when the Government shall be removing the alien.

Although some courts have suggested that the language of 8 U.S.C. § 1231(a)(2) mandates detention, those suggestions are, with all due respect, incorrect. First, *Zadvydas* itself says that "the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien *normally is held in custody*." *Zadvydas*,

533 U.S. at 682 (emphasis added). This language indicates custom, not mandate. Second, in *Zadvydas*, the court spoke of the "removal period" as the time when "reasonably foreseeable removals could be accomplished." *Id*. at 680. Thus, under *Zadvydas*, unless removal is possible—which it isn't here—the Government cannot detain an alien even for a short amount of time. So, although the Seventh Circuit has not had the opportunity to address the question, other Circuits are clear that *Zadvydas*' "spoke broadly" as to the applicability of its "ultimate holding" that there is a reasonable time limitation on the detention of deportable aliens. *Xi*, 298 F.3d at 835 (quoting *Zadvydas*, 533 U.S. at 682) (concluding that "[i]n assessing the applicability of the statute, the Court spoke broadly . . . ."). So, although *Zadvydas* addressed § 1226(c) explicitly, the reasonable time limit the Supreme Court applied pertains to § 1231(a) with equal force.

Perhaps most telling on this point are the Government's own exhibits. These show that even the United States Department of Justice does not believe that detention during the 90-day removal period is mandatory. As the Department of Justice concedes:

> the purpose of the removal period, however, is to facilitate the execution of the removal order. If, therefore, an alien has been finally granted withholding or deferral of removal and ICE is not actively pursuing the alien's removal to an alternate country, *the INS has authority to consider the release of such alien during the removal period*.

Memorandum for Regional Counsel from Bo Cooper, General Counsel, U.S. Dept. of Justice (Apr. 21, 2000) (emphasis added) (Government Exhibit D). Thus, there is no merit to an argument that detention during the removal period is mandatory.

**B. The Government Had Its Bite At The Apple And Cannot Now Remove Mr. Al-Bareh To A Country Not Designated In His Removal Hearing.**

As discussed above, the Government cannot detain Mr. Al-Bareh unless it can effect his removal. The Seventh Circuit has held that the Government may not deport an alien "without a fair hearing." *Kuhai v. INS*, 199 F.3d 909, 913 (7th Cir. 1999). The regulations state that a

country of removal must be designated in the removal hearing. 8 C.F.R. § 1240.10(f). Mr. Al-Bareh did not have a fair hearing about deportation to Saudi Arabia. There is no evidence that the IJ designated Saudi Arabia or heard any evidence as to Saudi Arabia. The IJ did not make any findings as to Saudi Arabia. The Government seeks to remove to Saudi Arabia only because it lost its case for Iraq. But, the Government cannot—under the Constitution or the regulations—effect Mr. Al-Bareh's removal to Saudi Arabia without a hearing and so cannot detain him with this aim.

**1. Under the Constitution, the Government may not remove Mr. Al-Bareh to Saudi Arabia without first holding a fair hearing, which already occurred as to Iraq only.**

The Seventh Circuit has ruled "that affirming a deportation order without a fair hearing concerning that deportation violates due process," *Kuhai*, 199 F.3d at 913, and the INS regulations, *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."). A fair hearing provides an alien "an adequate opportunity to defend themselves against that deportation." *Kossov v. INS*, 132 F.3d 405, 408 (7th Cir. 1998). In short, the immigrant must have an "opportunity to mount a case for relief insofar as asylum and withholding require an alien to establish the necessary country-specific showings." *Najjar v. Ashcroft*, 257 F.3d 1262, 1296 (11th Cir. 2001).

To have a fair hearing, the IJ must designate, hear evidence, consider arguments, and make findings as to the country of removal. In *Kossov*, the Government tried to remove a couple to Russia after their immigration proceedings focused on removal to Latvia. *Kossov*, 132 F.3d at 408. The Seventh Circuit held that removal to Russia in those circumstances was

unconstitutional. *Id*. at 408. The Seventh Circuit noted that: (1) the application for asylum had been directed to Latvia; (2) both of the IJ's oral opinion and the Board of Immigration Appeals' ("BIA") written opinion were concerned with deportation to Latvia; and (3) the IJ never informed the Kossovs that they had the right to introduce evidence directed against deportation to Russia. *Id*. The Seventh Circuit did not allow deportation to Russia under those circumstances because the "record contain[ed] precious little evidence relating to Russia at all[—]both the hearing before the IJ and the BIA's review concentrated almost exclusively on Latvia." *Id*. at 408. And, although there was some evidence regarding Russia in the record, it was not enough: "what little evidence there is concerning Russia is certainly not substantial enough to justify this Court in upholding the order of deportation." *Id*. Thus, deporting the aliens in *Kossov* to Russia without notice and a hearing concerning Russia deprived them of "anything approaching a full opportunity to present evidence concerning their fears of persecution in Russia." *Id*.

Similarly, Mr. Al-Bareh's hearing had "precious little" evidence as to Saudi Arabia, which is not surprising since that country was not designated. The following catalogues the IJ's only three references to Saudi Arabia in its opinion:

- "After the uprising, the respondent left Iraq and went to a refugee camp in the Saudi Arabian [desert]. According to the respondent, the conditions at the camp were very poor but there were approximately a hundred people at the camp who opposed the Hussein regime and the respondent found some friends." *Al-Bareh*, No. A75-052-990 at *2.

- "In Saudi Arabia, [Al-Bareh's friend, Hamid Al-Shawi,] was classified as a prisoner of war and taken to a camp for prisoners of war . . . . After a year in the camp, he was able to change his status to refugee." *Id.* at *4.

- "Fortunately for the respondent, he was able to avoid arrest and he escaped to Saudi Arabia." *Id.* at *8.

It goes without saying that these passing references are insufficient to satisfy due process.

**2. Under the 8 C.F.R. § 1240.10(f), the Government may not remove Mr. Al-Bareh to a Saudi Arabia unless it designated Saudi Arabia in the removal hearing.**

In addition to the Constitutional duty, the Code of Federal Regulations require certain elements for a removal hearing. Under 8 C.F.R. § 1240.10(f), the IJ "*shall* . . . identify for the record a country, or countries in the alternative, to which the alien's removal may be made pursuant to section § 241(b)(1) of the INA if the country of the alien's designation will not accept him or her into its territory, or fails to furnish timely notice of acceptance, or if the alien declines to designate a country." 8 C.F.R. § 1240.10(f) (emphasis added). As 8 C.F.R. § 1240.10(f) makes clear, the IJ is required to ("shall") designate the countries of removal. *Id*. In *Kuhai*, the Seventh Circuit started its discussion of the merits by noting that "the Board again ha[d] modified a plaintiff's order of deportation without allowing the plaintiff to brief issues relevant to her deportation to that country." *Kuhai*, 199 F.3d at 914. The Seventh Circuit stated that such designation is required because the alien and the ICE must have the right to brief the issues related to any country of deportation in order to satisfy due process. *Id.* at 913 ("Neither Kuhai nor INS have had the opportunity to brief the issue whether she may be eligible for Ukrainian citizenship or may be forced to return to Ukraine as a non-citizen."); *see also Najjar*, 257 F.3d at 1295-96 ("[T]he immigration courts did not give the aliens adequate notice of the designated removal country and, as a result, the applicants were deprived of an opportunity to offer statutorily required, country-specific evidence necessary to establish eligibility for relief under the INA."). Here, the IJ did not notify Al-Bareh that he could make arguments as to Saudi Arabia because, of course, the Government was then not seeking to deport him there.

The Government cites *Jama v. ICE*, 543 U.S. 335 (2005) to support its argument. But, in *Jama*, the IJ did designate the country of removal: "The Immigration Judge ordered petitioner removed to Somalia, his country of birth and citizenship." *Id*. at 337-38 (also referring to

Somalia as the "designation country"). Further, allowing Government to seek removal to a country not designated, as it is trying to do in this case, violates well-settled rules of statutory interpretation because it renders the designation requirement in 8 C.F.R. § 1240.10(f) superfluous. The IJ in *Jama*—following the regulations—designated Somalia.

## IV. CONCLUSION

Mr. Al-Bareh has been detained for over ten months and did not get *any* hearing, let alone a full and fair one, concerning the country to which the Government now says, after-the-fact, it wants to remove him. The Government's argument that it has the authority to continue to detain Mr. Al-Bareh, even though it is unable to remove him to Saudi Arabia, is wrong. Because the Government cannot effect Mr. Al-Bareh's removal to Saudi Arabia, his detention is unlawful as not tied to a legitimate governmental purpose. Thus, Mr. Al-Bareh respectfully asks this Court to grant his petition for writ of habeas corpus.

Date: April 17, 2008

Respectfully submitted,

*/s/ Alicia L. Frostick*_____

Charles Roth
Claudia Valenzuela
National Immigrant Justice Center
208 S. LaSalle St., Suite 1818
Chicago, IL 60604
312/660-1613

Alicia L. Frostick
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601
312/861-2000
ATTORNEYS FOR PETITIONER, LOUI AL-BAREH

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing **PETITIONER'S REPLY** was served on April 17, 2008 to all counsel of record via the court's ECF system.

*/s/ Alicia L. Frostick*________
Alicia L. Frostick